# IN THE CASE OF:

| | |
|---|---|
| Millard M. Moody and<br>Minnie L. Moody,<br><br>        Plaintiffs,<br><br>vs.<br><br>CareAlliance Health Services,<br>Picker International, Inc. d/b/a<br>Marconi Medical Systems, Inc.<br>d/b/a Philips Medical Systems<br>(Cleveland), Inc.<br><br>        Defendants. | C/A No. 2:05-02470-18<br><br>**ORDER** and **OPINION** |

## I. Background

  Plaintiffs, South Carolina residents, filed this suit in the Court of Common Pleas for Charleston County against defendants CareAlliance, a South Carolina corporation, and Picker International, Inc., a New York corporation with a principal place of business in Ohio. While the case was still in state court, CareAlliance filed a South Carolina Rule of Civil Procedure 12(b)(8) ("Rule 12(b)(8)")[1] motion to dismiss the claim against it on the grounds that another action is pending between the same parties for the same claim.[2] CareAlliance asserted that it and Roper are the same for purposes Rule12(b)(8), and it

---

[1] Rule 12(b)(8) provides that a case may be dismissed if "another action is pending between the same parties for the same claim." S.C. R. Civ. P. 12(b)(8). There is no similar federal rule in the Federal Rules of Civil Procedure.

[2] In 2003, plaintiffs filed a separate action in the South Carolina Court of Common Pleas for the Ninth Judicial Circuit against Roper alleging negligence by its x-ray technician during a stress test taken by plaintiff Millard M. Moody. Plaintiffs alleged a series of actions taken by Roper, through its x-ray technician, leading to Mr. Moody's fall from the x-ray table and resulting in injury. Roper has defended the suit, and it has been pending on appeal since July 14, 2003.

alleged that plaintiffs asserted the very same acts and omissions of negligence in their pending case against Roper.

When Picker learned of the Rule 12(b)(8) motion it removed the case to federal court on the grounds that CareAlliance was fraudulently joined to destroy diversity jurisdiction. Because the case is in federal court with non-diverse parties, plaintiffs moved to remand.

## II. Analysis

In order to successfully claim that CareAlliance has been fraudulently joined to destroy diversity jurisdiction, Picker must show that there is "no possibility that [plaintiffs] could establish a cause of action" against CareAlliance in state court. Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993). Picker claims that Rule 12(b)(8) bars any possibility of a recovery against CareAlliance in state court, and it argues that pursuant to Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), Rule 12(b)(8) should be applied because it is substantive rather than procedural.

In federal diversity actions, federal courts are to apply state substantive law and federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). While Rule 12(b)(8) is normally considered a procedural rule, Picker argues that it is substantive law in this case. The Supreme Court stated in Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99 (1945):

> [I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of the litigation, as it would be if tried in a state court.

Guaranty Trust, 326 U.S. at 109.  Thus, "a statute that would completely bar recovery in a suit if brought in a state court bears on a state created right vitally . . . . As to consequences that so intimately affect recovery or non-recovery[,] a federal court in a diversity case should follow state law."  Id.  Picker argues that Guaranty Trust mandates application of Rule 12(b)(8) as substantive law in this case because it would bar plaintiff from recovering against CareAlliance.

Picker points to a virtually identical provision in the Illinois Code of Civil Procedure which provides for dismissal when "there is another action pending between the same parties for the same cause."  Ill. Code Civ. Proc. §2-619(a)(3).  In Seaboard Finance Co. v. Davis, 276 F.Supp. 507 (7th Cir. 1967), an Illinois federal district court determined that Section 48(1)(c) of the Illinois Code, the predecessor to section 2-619(a)(3), should be applied in a diversity case.  Seaboard, 276 F.Supp. at 517.  The Seaboard court looked at three factors under the Erie doctrine: "(1) whether the variance between the state and local rule is such that it will affect the outcome of the litigation; (2) whether the variance is of a nature that it would encourage forum shopping; and (3) whether there is some countervailing federal consideration which would justify the variance."  Id. at 515.  The Seventh Circuit determined that there was certainly a substantial variance between the Illinois state court practice and the practice in federal court, as the Illinois rule barred such repetitive suits while federal courts generally allow repetitive suits unless they fit within the narrow categories for abstention.  Id. at 516.  Additionally, the Illinois district court found that the discrepancy between

the laws promoted forum shopping, as litigants would have a forum for repetitive suits in federal courts that was not available in Illinois state courts. Id.

The Seaboard court also found that the federal principle of concurrent jurisdiction did not justify the variance between state and federal law. The purpose of concurrent jurisdiction is to provide protection against abuse of out-of-state litigants; this protection is not necessary if their claims were already barred in state court. Id. Finally, the Seventh Circuit cited two Supreme Court decisions specifically holding that Erie precludes the maintenance of a diversity action in a federal court where the forum state has closed its doors to the relief sought. Id. The Seaboard court found that the Erie factors supported application of the Illinois law in the federal diversity action.

Unlike Seaboard, federal policies do not favor application of the South Carolina rule in this case. The variance between state and local law will not affect the outcome of this litigation. Under the South Carolina rule, if CareAlliance and Roper are determined to be the "same parties" for purposes of Rule 12(b)(8), CareAlliance should be dismissed. Under the federal rule, the case should be remanded to state court for lack of diversity where CareAlliance may be dismissed pursuant to its pending Rule 12(b)(8) motion.

Additionally, this is not a situation where plaintiffs have engaged in forum shopping. Plaintiffs have not tried to bring an action in federal court that is barred in state court. Instead, plaintiffs brought this action in state court and it was Picker who removed the action to federal court. While the variance between state

and federal laws might encourage forum shopping in some cases, such issues are not implicated here.

The third and final <u>Seaboard</u> factor does not strongly favor application of Rule 12(b)(8). Unlike <u>Seaboard</u>, plaintiffs are unable to maintain this diversity action without the application of Rule 12(b)(8). The <u>Seaboard</u> court was concerned with the fact that without the state rule, the federal court would have provided a forum for litigation that was barred in Illinois state courts. If Rule 12(b)(8) is not applied here, the case will be remanded and a South Carolina state court will decide whether the action against CareAlliance may proceed.

Because federal policies do not favor application of a state rule of civil procedure in this federal diversity action, this court will not consider whether CareAlliance should be dismissed pursuant to Rule 12(b)(8).[3] Additionally, the issue of whether CareAlliance and Roper truly are the "same parties" for purposes of Rule 12(b)(8) is an unsettled issue of state law which is better decided by a state court. Because there is a lack of complete diversity, this court does not have jurisdiction, and the case must be remanded.

---

[3] As discussed in a status conference with the parties on January 12, 2006, this court does not have the factual basis to make this determination. Upon remand, the state court will have a full record to enable it to decide this issue.

**IV.  Conclusion**

For the reasons set forth above, it is therefore **ORDERED** that plaintiff's Motion to Remand be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 17, 2006**
**Charleston, South Carolina**

6